# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF MIDDLESEX, OCTOBER TERM 1827, AT CAMBRIDGE.

#### PRESENT:

Hon. ISAAC PARKER, Chief Justice,
Hon. SAMUEL PUTNAM, ⎫
Hon. SAMUEL S. WILDE, ⎬ Justices.
Hon. MARCUS MORTON, ⎭

## Esther Clarke *versus* John Tufts.

An executor who is residuary devisee, by giving bond in the probate office for the payment of all the debts and legacies, acquires an absolute title in the estate devised, and of course may convey an indefeasible title to a *bonâ fide* purchaser; and whether he does or does not give notice of his appointment, is in this respect of no importance.

Whether a creditor of the testator, having obtained judgment and execution against an executor who has given such bond, can levy upon the estate devised, before any conveyance of it has been made, *quære*.

A testator indebted on a bond secured by a mortgage on part of his land, bequeaths an annuity to A, and makes B and C his executors and residuary devisees. The executors give bond in the probate office for the payment of all the debts and legacies, divide the estate between them, and procure a discharge of the first mentioned bond and mortgage by giving each his separate bond for half of the debt, with a mortgage on his portion of the land originally mortgaged. The annuitant brings a bill in equity for arrears, and obtains a decree, in which it is ordered that the execution to be issued shall be satisfied out of estate which has not been taken and appropriated for the payment of the testator's debts. *Held*, that by a just construction of the decree the land mortgaged was not liable to be ex ended upon.

This cause was argued at October term 1826, by *Gorham*, for the demandant, and *Hoar* and *Peabody*, for the tenant.

Clarke
*v.*
Tufts.

The points decided are fully stated in the opinion of the Court, which was delivered at this term by

PARKER C. J.   This is an action of *entry sur disseisin,* wherein the plaintiff demands seisin and possession of certain lands, of which she declares herself to have been seised within thirty years, and until she was disseised thereof by the tenant.   The tenant pleads the general issue, and two several pleas in bar, which are distinct in their nature and their legal effect, and will therefore be considered separately.

The first plea in bar avers, that the demanded premises were of the estate of John Harris, he having died seised thereof; that he made his last will and testament, by which he ordered that all his just debts should be paid, and gave and bequeathed several specific annuities and legacies, and bequeathed and devised all the rest and residue of his real and personal estate to Thomas Harris and Jonathan Harris, who were appointed the executors of the will; that the will was duly approved and allowed, but Thomas and Jonathan Harris never gave notice of their appointment to the trust, nor of their acceptance thereof.   It is further averred, that in the year 1814 Thomas and Jonathan Harris both died, leaving the debts of the testator unpaid; that administration *de bonis non,* with the will annexed, was committed to another Thomas Harris and Richard D. Harris, who obtained from the Court of Common Pleas for the county of Middlesex, license to sell so much of the real estate of John Harris, for the purpose of paying his debts, (his personal estate being insufficient therefor,) as would produce the sum of 28,803 dollars and 34 cents ; and that afterwards, on the 6th of November, 1815, the administrators, in pursuance of the license, sold the whole of the estate of John Harris, including the demanded premises, to one Nathan Adams, to whom they made their deed in due form of law, and that Adams conveyed the same to the tenant.   All the acts and doings of the administrators required by law to render the sale valid are averred in the plea.   And it is further averred, that the demandant has no title to the premises except under the first named Thomas Harris, one of the executors and residuary devisees, who had acquired the right and interest of Jonathan Harris, the other

devisee, by a release from him, and had conveyed the same to the demandant by deed of mortgage dated the 1st of November, 1805.

The demandant's replication to this plea in bar admits that the demanded premises were of the estate of John Harris the testator, excepting that he had . mortgaged the same to John Clarke, the husband of the demandant, whose estate she administers, in the year 1795, and avers that John Harris, at the time of his decease, was seised and possessed of a great amount of personal property ; that the will was duly proved and allowed, and that on the 25th of October, 1805, Thomas and Jonathan took upon themselves the trust of executors, and gave bond with sureties to the judge of probate, n the sum of 200,000 dollars, conditioned to pay all the debts and legacies of John Harris ; that they took possession of all the real and personal estate, and divided the same between them by mutual conveyances and releases; that they never returned any inventory of the estate, real or personal, nor presented any list of debts or claims, nor rendered any account- of their doings, not being thereto required by law ; and the replication admits that Jonathan released to Thomas, as set forth in the plea, and that Thomas conveyed to the demandant by deed of mortgage.   To this there was a general demurrer and joinder.

The general question presented by these pleadings is, whether the sale by the administrators *de bonis non* of the estate of John Harris had authority, by virtue of the license of the Court of Common Pleas, to sell the demanded premises, so as to defeat the title of the demandant under the deed of Thomas Harris, one of the residuary devisees, who had acquired all the right of both under the will, by the release of the other.   And this question is entirely settled by the case of *Thompson* v. *Brown*, 16 Mass. R. 172, unless the fact asserted in the plea, and not denied in the replication, viz. that the. executors gave no notice of the acceptance of the trust, requires a different decision.

In that case, which was decided upon an agreed statement of facts, it was expressly stated that such notice had been given and duly published, and it is thought by the counsel for

the tenant, that this case must turn upon that distinction. It does not appear, however, that the circumstance of notice was considered by the Court as the *sine qua non* of the decision. It was referred to in support of the argument against the validity of the license to sell, but there is a clear intimation throughout the opinion of the Court, that the case of a residuary devise under which the executor has given bond to pay the debts and legacies, was not within the jurisdiction of the Court, for the purpose of granting license to sell the estate so devised. And we now think, for the reasons there given and others which will be now expressed, that that opinion was correct. By express provision of the statute, an executor so situated is not obliged to return any inventory, present any list of debts or claims, or settle any account. How then can the judge of probate certify that there is a deficiency of personal assets, or that it is necessary that the real estate should be sold ? And yet, without such certificate, the courts are expressly prohibited from granting a license. See *St.* 1783, *c.* 32, § 3. Besides, the effect of the provision of the statute in regard to residuary devisees and legatees, if they give bond with sureties to pay all the debts and legacies, they not being accountable for the estate otherwise than *upon such bond, is to vest in them an absolute and indefeasible title to the estate devised, and to give them full authority to sell and convey the same without any order or license of* any court, so-that a *bonâ fide* purchaser under them acquires an absolute right to the estate. The executors, being residuary devisees, take the estate under the will, and upon giving such bond as the law requires, their title is complete and perfect. The legislature has made such bond a substitute for the estate of the deceased, so that there is no longer any lien upon the real or personal estate of the testator by his creditors, after the executors shall have conveyed the same to *bonâ fide* purchasers. Whether such creditors, having obtained judgment and execution against an executor who has given such bond, can levy upon the estate devised, before any conveyance of it, may be matter of inquiry in some future action.

The principle upon which this opinion is founded, was de-

cided by this Court many years ago, before its decisions were reported ; as is stated by Mr. Dane, in his Abridgment, *vol.* 1, *p.* 574.

In a case decided in the county of Worcester in the year 1782, (*Divol, administrator de bonis non of Tulatt,* v. *Commissioners of Lechmore,*) Lechmore, who was executor and residuary legatee of Tulatt, gave bond to pay debts and legacies, and took into his hands the estate of Tulatt, and used it as his own. The Court decided that when he had done this, that is, given the bond, he had administered on the estate, and the testator's cattle &c. had become his, and so the property was changed.

Now in relation to this question, the fact that no notice was given by the executors of their taking upon themselves the trust, is of no importance. Their rights and liabilities were the same, with or without such notice. The object and effect of this notice, as required by *St.* 1791, *c.* 28, is to limit the time within which executors and administrators shall be liable to suits for debts claimed against the estate ; not to give them a lien upon the estate, which by other provisions of the statute is removed. If no notice has been given, then the time is no bar to the action, and if the estate remains in the hands of the executor, perhaps it may be levied on ;[1] but the power of the executor over the estate does not depend upon his giving notice of the appointment, nor are his bonds to pay debts and legacies the less valid for want of notice. So that a purchaser cannot be prejudiced by his failure to give the required notice. It is sufficient for the creditor, that the law has provided for him a sufficient fund out of which, with reasonable diligence, he may obtain satisfaction. Nor does it alter the case, that by possibility, the obligor and his sureties may become insolvent. The law presumes that the judge of probate will take ample and sufficient security, and the case can hardly occur where the creditors will suffer, unless there should be gross negligence on their part. And it is certainly more reasonable they should suffer, after a delay of nine or en years, giving credit all that time to the executor and his

342

---

[1] See Revised Stat. *c.* 63, § 4.

sureties, than that a purchaser of the estate from those who have the entire control, as well as the power to sell it, should be defeated of their title. In the case before us the testator died in 1804. His will was proved in the year following. His executors, residuary devisees, gave bond with sureties in a sum sufficiently large to cover all debts and legacies. They entered upon the estate, divided it between them, and each gained a separate title to his moiety. One of them sold to the demandant, or mortgaged to her, to secure a debt due from the testator himself substantially. The executors lived nine years after these transactions, and for aught appearing to the contrary, they and their sureties were in full credit the greater part of this time. In 1815, ten years after the will was proved, administrators *de bonis non* are appointed, who apply for and obtain leave to sell the real estate of the deceased to pay his debts, and this without any notice to those who relying upon these public acts had purchased the estate. In the view of moral justice, as well as of law, a sale under such circumstances should be void. Nor is there any hardship upon the purchasers under this sale. The law, the records of the probate office, and the registry, were open to their inspection. They might have there seen, that the executors had undertaken to pay all debts and had given security therefor ; and that the demandant held the estate under a deed from one of the executors upon a good and valuable consideration ; and to purchase under these circumstances was to volunteer in a very doubtful speculation.

For the foregoing reasons we are of opinion, that the replication to the second plea in bar is good and sufficient.

The third plea in bar sets up a defence of a different char-acter, but not more successful in its issue.

It avers, as before, that the demandant's title rests upon a deed of Thomas Harris made in 1805 ; that the same John Harris died seised of the estate, and by his last will bequeathed to one Sukey Prentiss an annuity of 300 dollars during her life, and to Elizabeth Holmes, wife of Elisha T. Holmes, another annuity of 300 dollars during her life ; that he gave specific legacies, and ordered that his debts should be paid, and devised the residue of his estate to Thomas and Jonathan

Harris ; that Thomas had no estate in the premises, except what he derived from the will, and from the release of the co-devisee ; that the will was duly approved and allowed, but the executors gave no notice of their appointment ; that the annuities being in arrear, the annuitants brought their bills in equity, praying for relief, whereupon decrees were passed against the estate of John Harris under the administration of Richard D. and Thomas Harris ; that writs of execution were issued, and were satisfied by levying the same on several parcels of the demanded premises ; that the annuitants conveyed the land so levied on to Richard Devens and Samuel D. Harris, who sold to the tenant.

The replication to this plea avers, that John Harris, the testator, on the 1st of August, 1795, mortgaged the demanded premises to John Clarke, the husband of the demandant, to secure the payment of £1000 mentioned in a bond of Harris to Clarke, of even date with the mortgage, which sum Clarke had lent to Harris ; that Clarke died seised in fee and in mortgage ; that afterwards, viz. in the year 1804, Harris died, leaving the debt unpaid and the mortgage in full force ; that the demandant became administratrix of the estate of John Clarke ; that John Harris made his will, as before stated, constituting Thomas and Jonathan Harris his executors and residuary devisees and legatees, and that they gave bond, as before stated, and divided the estate between them, giving mutual releases, &c. ; that on the 1st of November, 1805, Thomas and Jonathan proposed to the demandant, that they should pay her the interest due on the bond of John Harris, that the bond should be given up and the mortgage released, and that she should receive in the place thereof separate bonds of Thomas and Jonathan, each for one half of £1000, the original debt, and that each should mortgage that part of the land before mortgaged which had been released to him as before mentioned ; all which was done pursuant to the proposal ; the two deeds comprising the whole of, and no other than, the land mortgaged by John Harris. The replication then avers, that in the suits in equity mentioned in the plea, besides the administrators *de bonis non* of John Harris, Mary, Harriet, Charlotte and Augusta B. Harris, in one of the

Clarke
*v.*
Tufts.

**344**

suits, and John and Jesse Brown in the other, were made parties as respondents, and were complained of as being seised and possessed of lands of John Harris, chargeable with the payment of his debts and legacies ; and that these respondents were duly summoned and appeared and answered, and were then and ever since have been seised and possessed of valuable real estate described in those complaints, of which John Harris died seised in fee, which were then and ever since have been in law liable to and charged with the payment of the debts and legacies, and no lawful cause was shown by them why the same should not be taken for that purpose ; that neither the demandant, nor any person in her behalf, nor any tenant or other person seised and possessed of the demanded premises, was summoned or in any way made a party to these suits in equity, nor had she or they any notice of the proceedings in the same until after the making of the decree stated in the plea in bar. It is also averred in the replication, that in the decrees it was provided, that the executions which might issue thereon should be satisfied out of the estate devised by John Harris to Thomas and Jonathan, which had not been taken and appropriated for the payment of any debt of John Harris ; and that this provision was inserted in the direction to the sheriff in the execution. And it is averred, that the estate in possession of Mary, Harriet, Charlotte and Augusta B. Harris, and John and Jesse Brown, was part of the real estate of which John Harris died seised, and had been devised to Thomas and Jonathan Harris, and was of greater value than all the sums awarded by the decrees, and was liable for the payment of debts and legacies, and had not been taken and appropriated to that purpose. The replication then avers, that all these facts were, at the time of making the decrees, well known to all the parties respondents in the suits, and also to the tenant to this writ, before the conveyances were made by the complainants to R. Devens and S. D. Harris and by them to the tenant.

To this replication there is a general demurrer and joinder.

The question arising out of these pleadings is, whether the extent of the executions upon the land in question, and the conveyances under the same, have vested the title in the

tenant so as to defeat the title of the demandant under the deed of Thomas Harris. It cannot escape observation, that the proceedings in the suits in equity were calculated, if not designed, to divest the demandant of her title, in order that the children of Jonathan Harris might save that portion of the estate of John, which is now in their possession, from the claims of the annuitants. Probably the Court were aware that persons interested in the property of which John Harris died seised, who were not parties to the bill, might be disturbed unless some measure was taken to protect them. The provision of the decree and the restriction in the executions, were thought to be sufficient. No property was to be taken but such as had not been appropriated to the payment of John Harris's debts or legacies. It does not appear that any land had been so taken or appropriated, except what may have been conveyed by the executors by virtue of their authority under the will ; and within the express words of that decree, if the conveyance made by Thomas Harris was to pay or secure a debt of John Harris, the levy will be void. The tenant's title under this decree and levy can be maintained only upon the most technical construction of the conveyances and transactions between the executors and the demandant    All equitable considerations go to defeat it ; and taking into view, that this title is bottomed only upon the decree of the Court sitting as a court of chancery, it is manifest that in construing and applying that decree the principles of equity ought to govern. If the demandant in this case had been made a party to the bill in equity and had shown to the Court, in her answers, the facts set forth in her replication in the present suit, it cannot be doubted the complainants would have been prohibited from extending their executions on the land held by her in mortgage. It would have appeared, that the very land taken was mortgaged to her husband more than thirty years before, by the very testator under whose bounty the annuitants claim ; that he died twenty years before, leaving the debt unpaid ; that his executors, who had become by law the owners of his estate under his will, had paid the interest due on the debt, and changed the form of the security without altering the substance, having re-mortgaged to the

**346**

administratrix of the mortgagee the very same land which was the subject of the former mortgage. The Court would undoubtedly have determined, that this land had been appropriated to the payment of John Harris's debts, and would at once have seen the injustice of allowing the annuitants to satisfy their claims out of estate thus equitably belonging to the demandant. And such ought to be the construction of this decree now ; and such is its natural, fair and legal construction. The mortgage of Thomas Harris was made to secure the debt of John Harris, which he Thomas Harris was obliged by law to pay. The substitution of the new mortgage for the old, and of the new bonds, did not alter the liability of Thomas, except that he became answerable for half of the debt, instead of being jointly with his brother answerable for the whole. It was for their convenience, and not for the advantage of the demandant, that it was done. No more land was taken than she held before. The creditors and legatees of John were not prejudiced ; their security was not diminished. To all reasonable and equitable intents and purposes the land extended upon had been appropriated to the payment or security of John Harris's debts, and therefore within the proviso of the decree could not be taken in satisfaction of the executions.

If the proceedings had been had at common law and judgment had been obtained and execution levied in common form, there would even then be a question whether, as the title and power to convey were in the executors, any sale by them for a valuable consideration and *bonâ fide*, though not to a creditor of John Harris to pay his debt, would have been liable to be defeated ; and some reasons against it are given in the opinion upon the other branch of this cause. But in the forum which the complainants chose, and under the circumstances detailed in the replication, there can be no doubt but that by a just construction of the decree of the Court, the land extended upon was exempt from an execution.

There is another view of the case which may render it doubtful at least, whether, if strict principles of law should be applied, the tenant's title under the annuitants could be sustained. The devisees were bound and obliged to pay the

debts of their testator. They were the sole owners of this land subject to the mortgage of John Clarke. They procured the discharge of this mortgage by giving their own bond and separate mortgages of the same land. They were no more personally liable for this debt after this transaction than they were before, having given bonds to pay this and other debts at all events. This should be considered as a mode of payment and security of the debt of their testator, and the land should be held by this creditor free from any attachment or levy of the other creditors, and more especially of legatees. The fact that the tenant knew of all the transactions, which is averred in the replication and admitted by the demurrer, takes away all occasion of regret for the failure of his expectations.